**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| WURZBURG, INC., | ) Case No. 10-21047-DSK |
| | ) |
|       Debtor. | ) |
| | ) Chapter 11 |
| | ) |

**DECLARATION OF ROBERT A. FERGUSON IN SUPPORT OF**
**THE FIRST DAY MOTIONS**

I, Robert A. Ferguson, declare as follows:

1. I am the Chief Executive Officer of Wurzburg, Inc. ("Wurzburg" or the "Debtor").

2. I am familiar with the Debtor's day-to-day operations, business affairs and books and records. No one individual has personal knowledge of all the facts in this Declaration. All facts set forth herein are based upon my personal knowledge of and familiarity with the Debtor's operations and finances, information learned from my review of relevant documents, information supplied to me by other members of the Debtor's management, the Debtor's professionals, or employees of the Debtor working under my supervision, or my opinions based upon experience, knowledge and information concerning the Debtor and the industry in which the Debtor operates. If called upon to testify, I would and could, testify competently to the facts set forth herein.

3. On February 1, 2010 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Tennessee, Western Division (the "Court").

4. Commencing a bankruptcy case often engenders uncertainty, and this uncertainty, left unchecked could adversely affect the Debtor and its operations. To minimize any such effects, the Debtor has filed a number of Motions requesting various types of relief from the Court (each a "First Day Motion" and collectively the "First Day Motions"). Each of the First Day Motions is crucial to Debtor's efforts to maximize creditors' recoveries. All capitalized terms not defined herein shall have the meanings given to them in the applicable First Day Motion.

5. In accordance with the Local Bankruptcy Rules, the Debtor has also requested that the Court schedule an expedited hearing at its earliest convenience to consider the First Day Motions. This Declaration is divided into two (2) parts. Part I describes the Debtor's business and the circumstances surrounding the commencement of these Chapter 11 case. Part II sets forth the relevant facts in support of each of the First Day Motions.

## PART I

6. This case was filed in order to restructure the company's finances, provide employment to its employees, pay its creditors and produce a return for its stockholders, if possible. The Debtor may seek to sell the business as a going concern in order to maximize the benefit to creditors and interested parties. Wurzburg has a solid customer base, however, the Debtor has liquidity constraints that have lead the Debtor to commence this Chapter 11 case.

*Description of the Debtor's Business*

7. The Debtor is an S corporation created and operating under the laws of the State of Tennessee. It has been a family owned business for over 100 years.

8. Wurzburg is in the industrial packaging distribution and labeling manufacturing industry.

9. Wurzburg's customer base includes 100 principal customers from which it derives approximately 60% of its income. This customer base has remained constant during the preceding year, except for the loss of business taken by former members of the sales force who have violated their employment contracts.

10. Wurzburg currently employs one hundred seventy-eight employees (178) individuals, including 137 in its Memphis, Tennessee operation.

## THE DEBTOR'S PRINCIPAL DEBT OBLIGATIONS

11. The Debtor has pre-petition loan obligations to one (1) principal secured creditor, First Tennessee Bank National Association ("FTB"). There is an additional pre-petition loan obligation to W & L Investment Partnership ("W & L"). Each of the secured creditors holds a lien position in all of Debtor's property and assets, real and personal, tangible and intangible, and the proceeds of such property and assets.

12. FTB holds a first lien security interest position on all assets of Wurzburg. FTB also holds a first deed of trust lien position on all real property owned by Wurzburg.

13. W & L holds a second lien position on all other assets of the Debtor.

## EVENTS LEADING TO THE CHAPTER 11 CASE

14. Because of economic issues experienced by various industries throughout the world in mid-2008 through 2009, the sales of Wurzburg declined in the fourth quarter of 2008 and continued throughout 2009. This decline appears to have been triggered by the current global credit crisis and resulting deterioration of consumer confidence in credit and consumer spending which has greatly affected the purchases of product manufactured by end users of the products produced by Wurzburg (the "Credit Crisis"). Wurzburg also had a reduction in sales as a direct result of several sales employees who left the company and took their books of business in violation of their employment agreements resulting in approximately $8 million in sales.

15. In August of 2008, the Debtor employed me as the Chief Executive Officer. I was charged with the duty to restructure the company through cost reductions and sales growth. Costs have been reduced and the Debtor intends to use the Bankruptcy process to rehabilitate its financial structure.

16. Wurzburg has continued to work with FTB in the control of disbursements and other operational issues on a weekly basis.

17. It is the intent of the Debtor to either reorganize and emerge from bankruptcy in a scaled down form or possibly market the business for sale as a going concern in an attempt to obtain a return for creditors in the case.

## PART II

## FIRST DAY MOTIONS

**A.  Expedited Motion for Entry of an Order Authorizing Maintenance and Use of Existing Bank Accounts, Cash Management System and Business Forms.**

18. In the ordinary course of business, Wurzburg maintains its primary bank accounts at FTB through which it manages cash receipts, transfers and disbursements for Wurzburg's business (the "Cash Management System"). A schedule identifying the Debtor's pre-petition bank accounts (collectively the "Pre-petition Bank Accounts") is described in this Motion.

19. The Debtor routinely deposits, withdraws and otherwise transfesr funds to, from and between such accounts by various methods, including checks, electronic fund transfers and direct deposits. All of the Pre-petition Bank Accounts are maintained at financially stable banking institutions where the deposits are protected by various government backed deposit protection insurance programs.

20. Wurzburg currently maintains a separate bank account for deposit and payment of its payroll taxes.

    **B.**    **Expedited Motion Pursuant to Sections 105(a), 366, and 507 of the Bankruptcy Code, for (I) Authority to Pay Pre-petition Utility Claims, (II) To Determine Adequacy of Assurance of Payment for Future Service From Utilities and (III) to Establish Procedures for Determining Requests for Additional Assurance.**

21. In the operation of its business, Wurzburg incurs utility expenses for water, sewer service, electricity, natural gas, local telephone service, waste and environmental disposal, long distance service and cellular phone service in the ordinary course of business. These utility services are provided by the utility providers included in the Motion. Although Wurzburg believes that this list encompasses all entities that could qualify as a utility provider, it reserves the right, without further Order of the Court, to supplement the list, if any utility provider has been omitted. Additionally, the listing of an entity to this Motion is not admission that any particular entity is a "utility" within the meaning of Section 366 of the Bankruptcy Code and Wurzburg reserves the right to contest any such characterization in the future.

22. Uninterrupted utility services are essential to the ongoing operations of the Debtor and, therefore, vital to the success of the Debtor in this case.

23. Should the utility providers refuse or discontinue services, even for a brief period, the Debtor's business operations would be severely disrupted. In particular, such discontinuation would irreparably disrupt the Debtor's ability to operate its warehouse facilities, negatively affecting customers, cash flow, and ultimately value to creditor recoveries.

24. Debtor fully intends to pay all post petition obligations owed to the utility providers in a timely fashion. Debtor expects that funds available under its Debtor-in-Possession Cash Collateral facility/order will be more than sufficient to pay all post petition utility obligations.

25.     I believe the procedures as outlined in this Motion set forth a fair process that will enable all parties to negotiate its respective positions and, when necessary, seek court intervention without jeopardizing Debtor's efforts in this case.

**C.    EMERGENCY MOTION TO APPROVE STIPULATION AND INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 363 AND 361, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 361, AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C).**

26.     By this Motion ("DIP Cash Collateral Motion"), the Debtor seeks authority to enter into an order to use cash collateral with FTB for post petition financing of the operations of Debtor pursuant to the terms of which are described in the Motion and Agreement attached to said Motion.

27.     FTB has funded the operations of Debtor on a pre-petition basis during a period of time in which the Debtor has been unable to generate sufficient income from sales to fund its costs of operations. Funding from FTB has enabled Debtor to maintain its operations while it attempts to reorganize and rehabilitate its financial obligations.

28.     Before determining to enter into this financial arrangement, the Debtor made attempts to seek financing from other parties and conducted vigorous and lengthy arms-length negotiations with FTB.  The Debtor ultimately determined that the proposal for Debtor-in-Possession use of cash collateral provided by FTB is the best available under the circumstances, and, most importantly, adequately addresses the Debtor's reasonably foreseeable liquidity needs.

29.     Approval of the financing arrangement with FTB is a key component of Debtor's ability to continue operations at this time.

  **D.**  **Expedited Motion Authorizing Payment of Pre-petition Compensation, Employee Reimbursements, Withholding Taxes, and Contributions, Costs, and Expenses Incident to Certain Employee Benefit Plans.**

  30.  By this motion the Debtor seeks authority to pay pre-petition compensation, employee reimbursements and withholding taxes

  31.  This matter must be addressed on an expedited basis in that employee payroll is paid in arrears and is due to be paid on February 5, 2010. Wurzburg employs approximately 178 individuals; 137 at its facility in Memphis, Tennessee (the "Employees"). The Employees perform numerous functions that are critical to the Debtor's daily operations, including management, accounting, administration, inventory processing and production. The Employees' skills and knowledge are essential for the Debtor to continue operations and maximize the value of its estates.

  I declare under penalty of perjury under the laws of the United States of America that the foregoing statement is true and correct.

  Dated: February 1, 2010

              /s/Robert A. Ferguson--------------------------
              Robert A. Ferguson, CEO of Wurzburg, Inc.