**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

___

In re:

WURZBURG, INC.,                                       Case No. 10-21047-DSK
                                                                        Chapter 11

          Debtor.

___

AMENDED MOTION FOR ORDER: (A) ESTABLISHING BIDDING PROCEDURES AND BIDDING PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OPERATING ASSETS OF THE DEBTOR; (B) ESTABLISHING PROCEDURES WITH RESPECT TO THE ASSUMPTION AND ASSIGNMENT OF RELATED EXECUTORY CONTRACTS, AND UNEXPIRED LEASES, INCLUDING FIXING OF CURE OBLIGATIONS AND ADEQUATE ASSURANCE OF FUTURE PERFORMANCE; (C) APPROVING THE FORM AND MANNER OF NOTICE OF SALE AND RELATED RELIEF; (D) SETTING EXPEDITED HEARING ON THE RELIEF REQUESTED HEREIN AND (E) OTHER RELATED RELIEF

___

        Wurzburg, Inc., as debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby files this amended motion requesting entry of an order: (a) establishing bidding procedures and bidding protections in connection with the sale of substantially all assets of the Debtor; (b) establishing procedures with respect to the assumption and assignment of related executory contracts and unexpired leases, including fixing of cure obligations and adequate assurance of future performance; (c) approving the form and manner of notice of sale and related relief; (d) setting expedited hearing on the relief requested herein; and (e) other related relief (the "Amended Procedures Motion"). In support of the Procedures Motion, the Debtor respectfully represents as follows:

## I. BACKGROUND

       A.       <u>The Chapter 11 Case</u>

       1.        On February 1, 2010, (the "Petition Date"), the Debtor filed a voluntary petition

Case 10-21047    Doc 236    Filed 04/16/10    Entered 04/16/10 14:38:35    Desc Main
Document      Page 2 of 15

in the United States Bankruptcy Court for the Western District of Tennessee for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its properties as debtor-in-possession. No trustee or examiner has been appointed in the above-captioned case (the "Chapter 11 Case"). A Committee for unsecured creditors has been formed which has engaged counsel for representation in this bankruptcy proceeding.

2. The Debtor is a corporation created and operating under the laws of the State of Tennessee with its principal place of business located in Memphis, Tennessee. It has been a family owned business for over 100 years. Debtor is a distributor of packaging materials for its clients such as providing corrugated boxes and packing material for customer's products.

3. Debtor and First Tennessee Bank entered into that certain Consolidated, Amended and Restated Loan and Security Agreement dated July 30, 2008, as modified by that certain Modification to the Consolidated, Amended and Restated Loan and Security Agreement dated September 30, 2008 (collectively, the "Loan Agreement"). Pursuant to the Loan Agreement, Borrower is indebted to Lender for a term loan in the original principal amount of $3,000,000.00 ("Term Loan") and a line of credit in the original principal amount of $12,000,000.00 ("Credit Line" and collectively with the Term Loan, the "Loans").

4. The current balances of the Term Loan and the Line of Credit at the time of this Motion being filed is Six Hundred Forty Six Thousand Two Hundred Fifty Eight Dollars and Thirty Three Cents ($646,258.33) and Five Million Seven Hundred Eighty Thousand Two Hundred Ninety Dollars and Forty Seven Cents ($5,780,290.47), respectively.

5. First Tennessee Bank is secured by a "blanket lien" on all of the Debtor's assets including real property and personal property (accounts receivables, inventory, contracts, etc.) along with some third party real property interests.

6. For the year ended December 31, 2009, the Debtor had net revenues of approximately Eighty Million Six Hundred Thirty Eight Thousand Dollars ($80,638,000.00) with a loss of Ten Million Three Hundred Fifty Thousand Dollars ($10,350,000.00) for the year. During the first quarter of 2010, the Debtor had net revenues of approximately Nine Million Nine Hundred Fifty-Two Thousand Dollars ($9,952,000.00) with an estimated loss of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00). During this time period, the Debtor went from over one hundred eighty (180) employees to its current number of approximately one hundred twenty (120) employees.

7. Since the Petition Date, the Debtor has operated under an Interim Order Granting Debtor's Motion For Use of Cash Collateral entered with the approval and consent of First Tennessee Bank and the Committee for Unsecured Creditors.

B. <u>The Debtor's Restructuring Efforts</u>
8. Before the Petition Date, the Debtor, in consultation with various parties including its current lender, explored various financial restructuring alternatives. To this end, the Debtor communicated with and assisted in the due diligence efforts of several lending institutions regarding such financing. In addition, Debtor communicated with and provided information to a number of parties regarding the purchase of some or substantially all of the Debtor's assets.

9. The Debtor also sought new sources of capital to no avail. In its business

judgment, it determined that they had no alternative but to offer substantially all of their assets for sale.

10. The Debtor has negotiated a sale of substantially all of their operating assets to SBT Fund VI, L.P. ("SBT") or its authorized designee and has executed a Letter of Intent ("LOI") which sets forth the basic terms of a sale. SBT and Debtor continue to work towards the execution of an Asset Purchase Agreement ("APA") upon the conclusion of SBT's due diligence with an APA to be executed on or before May 25, 2010, if not earlier. The Board of Directors has approved the sale of the Debtor based on the terms set forth in the executed SBT LOI. Debtor will file a Motion to Approve the Sale of Substantially All of Their Operating Assets Free and Clear of All Liens, Claims and Encumbrances (the "Sale Motion") substantially concurrent with this Procedures Motion.

## II. JURISDICTION

11. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are §§ 105(a), 363(b), 365, 507(a) and 1146(c) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure.

## III. RELIEF REQUESTED

12. The Debtor has determined that an immediate sale of substantially all of its remaining operating assets free and clear of liens, claims, interests and encumbrances, under the procedures sought herein, is the best way to maximize value for those assets and to effectuate an orderly wind down of its business operations. Similarly, as a component of such sale, the Debtor needs to assume and assign certain unexpired leases and executory contracts pursuant to § 365 of the Bankruptcy Code. Moreover, a sale of those assets, as a going concern, under the procedures

sought herein, will preserve jobs for most of the Debtor's employees.

13. To provide a fair and competitive process for the sale of substantially all of the Debtor's assets, the Debtor hereby requests a hearing (the "Hearing") for the Court to consider the entry of an order (the "Procedures Order") approving the bidding incentives (the "Bidding Incentives"), bidding procedures (the "Bidding Procedures") and assumption and assignment procedures ("Assumption and Assignment Procedures") referenced herein and approving the form and manner of notice of these procedures.

14. Substantially concurrent with the filing of this Amended Procedures Motion, the Debtor is filing a motion for an order authorizing the sale of substantially all of their assets (the "Sale Motion") pursuant to 11 U.S.C. §§ 105, 363, 365 of the Bankruptcy Code to SBT and a Motion to Authorize Assumption and Assignment of Unexpired Leases and Executory Contracts (the "Assignment Motion"). The relief requested herein is preliminary to the relief that the Debtor will request in the Sale Motion and the Assignment Motion.

15. This Amended Procedures Motion contemplates the entry of an order which would:

(a) approve the Bidding Incentives, including a breakup fee of $300,000 and an overbid requirement for competing bids;
(b) approve the Bidding Procedures to be employed in connection with the sale of Acquired Assets (as that term is defined below), including establishment of deadlines and terms and conditions for the submission of competing offers for the sale;
(c) approve Assumption and Assignment Procedures governing the assumption and assignment of unexpired leases and executory contracts, establishment of cures, cure amounts and adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code; and
(d) approve the proposed notice of the procedures established by this Court.

16. At the hearing on the sale of Acquired Assets (the "Sale Hearing"), the Debtor will seek entry of an order on the merits authorizing the sale and related relief sought in the Sale

Motion. The Sale Hearing shall be conducted no later than May 19, 2010. At the hearing on the Assignment Motion (the "Assignment Hearing"), which the Debtor anticipate will be conducted at or prior to the Sale Hearing, the Debtor will seek entry of an order on the merits authorizing the assumption and assignment of certain executory contracts and unexpired leases, fixing cure obligations, and determining adequate assurance of future performance.

### IV. PROPOSED SALE OF THE ACQUIRED ASSETS
A. Description of Assets to be Sold

17. By this Motion, the Debtor seeks to establish procedures for the sale of substantially all of the assets owned by the Debtor that are used in its business operations, wherever located (the "Acquired Assets"), including but not limited to the assignment of Debtor's corporate assets, including furniture, fixture, equipment, accounts receivables, inventory, good will, trade names and substantially all of the property, real, personal, tangible and intangible used in supporting the business operations. In short, except as excluded in Paragraph No. 23 below (or excluded under a Bid) the Acquired Assets will include substantially all tangible and intangible assets utilized in connection with the Debtor's ongoing business operations.

18. The Acquired Assets will not include avoidance actions under the Bankruptcy Code or other applicable laws, rules or regulations.

19. The purchase of the assets may require the Debtor to assume and assign such contracts (and certain other contracts and/or leases) in accordance with section 365 of the Bankruptcy Code. In order to assume any contracts and leases, the Debtor will require the purchaser to cure all material defaults that may exist under the terms of each agreement as required by law (unless the purchaser requires such cure obligations to be paid by the Debtor). Therefore, as part of the relief requested herein, and as necessary correlating to the proposed sale

of Acquired Assets, the Debtor seeks approval of the Assumption and Assignment Procedures. The Assumption and Assignment Procedures will be utilized to establish all necessary cures, cure amounts and to determine adequate assurance of future performance.

      B.      <u>The Bidding Procedures</u>

      20.      In order to promptly obtain and appropriately evaluate and compare competing bids, ensure an orderly sale process and maximize proceeds from the sale of the Acquired Assets, the Debtor submits that it is necessary to establish certain bidding procedures.

      21.      Bankruptcy Rule 6004 contemplates that a debtor may conduct an auction to obtain the highest or otherwise best price for sale of its property. In connection with this Motion, the Debtor proposes to invite interested parties to make higher or better offers for the Acquired Assets. The Debtor seeks authority to implement the following Bidding Procedures:

      (a)      The Acquired Assets shall be all of the Debtor's assets: the Acquired Assets.

      (b)      All competing bids to purchase (a "Competing Bid") must be for cash, must be in writing, must conform to the terms and conditions prescribed in the Procedures Order, and must be binding on each entity participating in the Competing Bid (the "Bidders"). All Competing Bids must be received by the undersigned counsel for the Debtor no later than May 16, 2010, 5:00 P.M. CENTRAL DAYLIGHT TIME (the "Bid Date). All competing bids will be shared with counsel for the Unsecured Creditors Committee and counsel for First Tennessee Bank..

      (c)      All Competing Bids must be in the form of a binding and enforceable asset purchase agreement containing terms that are the same or substantially similar the subsequent APA. A Competing Bid must indicate by black-lining or comparable means all differences between the APA and the Competing Bid.

      (d)      All Competing Bids must be accompanied by a certified or bank check, wire transfer, irrevocable letter of credit, or cash equivalent payable to counsel to the Debtor, Harris Shelton Hanover Walsh, PLLC, as agent, in the amount of the greater of (i) $400,000 or (ii) 10% of the net cash value of the Bid amount as an earnest money deposit to be held in escrow and applied toward the purchase price if the Competing Bid is accepted by Debtor and the sale to the Competing Bidder is approved by the Bankruptcy Court ("Deposit"), or retained by Debtor as liquidated damages if the Competing Bid is accepted by the Debtor and approved and

*Wurzburg, Inc.10-21047 DSK*       7

    confirmed by the Bankruptcy Court but the closing of the sale does not occur within 5 business days after entry of an order approving the sale to such Competing Bidder, other than because of a default by the Debtor.

(e) All Competing Bids shall be accompanied by evidence satisfactory to the Debtor of the Competing Bidder's financial wherewithal to consummate the transaction. If internal financing is being relied upon, the Competing Bidder must submit a financial statement(s) demonstrating in sufficient detail availability of funds with the Competing Bid. If external financing is being relied upon, commitment letters from third party financing sources must be attached to the Competing Bid. Prior to the Bid Date, each Competing Bidder shall have obtained authorization and approval from its Board of Directors (or comparable governing body) with respect to the submission of its Competing Bid and execution and delivery of its asset purchase agreement, and shall have provided evidence, in form and substance satisfactory to Debtor of such authorization.

(f) Each Competing Bid must fully disclose the identity of each entity that will be acquiring the Acquired Assets under, or otherwise participating in connection with, such Competing Bid. Each Competing Bid should provide sufficient financial and other information regarding both the Competing Bidder and partner(s), if any, to satisfy the Debtor with respect to the requirements enumerated in section 363(m) of the Bankruptcy Code or as otherwise provided for elsewhere herein.

(g) Potential Competing Bidders must complete their due diligence on or prior to the Bid Date. Potential Competing Bidders will be provided with the opportunity to meet with management and have access to a data room for the purposes of conducting due diligence. Before conducting due diligence, Potential Competing Bidders must execute and deliver to Debtor a confidentiality agreement in a form satisfactory to the Debtor.

(h) Each Competing Bid must represent at least a $400,000 greater overall cash equivalent value to the Debtor than that provided by the subsequent APA for the Acquired Assets (the "Initial Competing Bid Amount").

(i) If no Competing Bids for the Acquired Assets are received by the Bid Date, then the sale shall be approved and confirmed by the Court at the Sale Hearing and the sale shall be consummated pursuant the subsequent APA.

(j) If one or more Competing Bids for the Acquired Assets are received by the Bid Date, then in evaluating whether a Competing Bid of Acquired Assets is a higher and otherwise better bid than subsequent APA, the Debtor and its advisors, in consultation with the Committee and its advisers, may consider, among other things: (i) the terms of such Competing Bid and any differences between/among it and other Competing Bids and/or subsequent APA; (ii) the extent to which the terms and conditions of the Competing Bid are likely to delay closing of the sale and the cost to the Debtor of such modifications or delay; (iii) the Bidder's financial situation and relevant wherewithal; (iv) the timing for payment of the cash consideration; (v) the probability of prompt closing; and (vi)

     any other material contingencies.

(k)  Only in the event that the Debtor and its advisors determine that a Competing Bid for the Acquired Assets is higher and otherwise better than the bid reflected in subsequent APA or if the anticipated APA is not executed, the Debtor shall conduct an auction (the "Open Auction"). The Open Auction shall take place immediately prior to the Sale Hearing, in the Bankruptcy Court, at a time, date and room location to be approved and announced by the Bankruptcy Court prior to the Sale Hearing. At the Open Auction, bids shall be in increments of at least $100,000. No bids may be accepted after the close of the Open Auction.

(l)  After the Open Auction at the Sale Hearing, the Debtor will present to the Bankruptcy Court (after consultation with the Debtor's secured creditors and the creditors' committee) for approval and confirmation, the Bid(s) that constitute the highest and best bid for the Acquired Assets (the "Successful Bid").

(m)  At the Sale Hearing the Debtor shall ask the Court to approve and confirm the Successful Bid. The Bidder whose Bid is approved and confirmed as the Successful Bid is referred to as the "Approved Bidder." Closing of the sale to the Approved Bidder shall occur within five (5) business days after the entry of the Order approving such sale (the "Closing Window"), unless the Debtor extends such period after consultation with Debtor's secured creditor and the creditors' committee. "Closing" shall be deemed to have occurred when the Debtor or its authorized agent receives the entire purchase price of the Successful Bid.

(n)  Upon the failure of an Approved Bidder to close because of a breach by the Approved Bidder, the next highest and best bid, as determined by the Bankruptcy Court at the Sale Hearing, will be deemed the Approved Bid without further order of the Bankruptcy Court. In the event an Approved Bidder fails to close the sale within the Closing Window and the Closing Window is not extended as set forth above in paragraph (p), the Deposit of such Approved Bidder shall immediately revert to the Debtor without further hearing.

(o)  All Bids are irrevocable until the earlier of (i) five (5) business days after the sale of the Acquired Assets has closed, and (ii) thirty (30) days after the Sale Hearing.

(p)  The Debtor's presentation to the Bankruptcy Court for approval of a particular bid does not constitute acceptance of such bid. A bid is accepted only when the Bankruptcy Court at the Sale Hearing has approved and confirmed that bid. No bid shall be deemed rejected until the earlier of Debtor's communication of such rejection in writing or 48 hours after the sale of the Acquired Assets has closed.

(q)  All of the Debtor's right, title and interest in and to the Acquired Assets shall be assigned and sold free and clear of all liens, claims, interests, and encumbrances, if any, with such liens, claims, interests, and encumbrances, if any, to attach to the proceeds received by the Debtor as a result of the sale with the same force and effect that such liens, claims,

       interests, and encumbrances now have, subject to the order of the Court.

(r)  The sale of the Acquired Assets shall be on an "as is, where is" basis without representation or warranties of any kind, nature or description by the Debtor, its agents, or the estate, except to the extent set forth in the Approved Bid or the APA. Except as otherwise set forth in the APA each Bidder shall be deemed to acknowledge and represent that it had a complete opportunity to inspect and examine the Acquired Assets and conduct any and all due diligence regarding the Acquired Assets prior to making its Bid, that it has relied solely upon it own independent review, investigation and/or inspection of any documents and/or Acquired Assets in making its Bid and that it did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or, with respect to the Acquired Assets, the completeness of any information provided in connection to the sale of the Acquired Assets, except as expressly stated in these Bidding Procedures and the APA.

C.  <u>Bidding Incentives</u>

22.  In an effort to generate maximum interest in the sale process, and pursuant to the LOI and subsequent APA, the Debtor has agreed to request Court Approval of the Bidding Incentives. Specifically, the Bidding Incentives that will be offered to SBT consist of (a) a breakup fee of Three Hundred Thousand Dollars ($300,000) if SBT is not the successful bidder (the "Breakup Fee"), payable upon the conditions set forth in the LOI and subsequent APA; and (b) an initial overbid minimum of Four Hundred Thousand Dollars ($400,000), plus subsequent incremental minimum bidding requirements of at least One Hundred Thousand Dollars ($100,000) (the "Overbid Minimums"). The Breakup Fee and Overbid Minimums are referred to collectively as the "Bidding Incentives."

V.  <u>ASSUMPTION AND ASSIGNMENT PROCEDURES</u>

23.  Substantially all remaining unexpired leases and executory contracts, are contained within the meaning of Acquired Assets. Therefore, as part of the relief sought herein, the Debtor seeks approval of the following Assumption and Assignment Procedures:

(a)  The Debtor will file and serve the Assignment Motion to approve assumption and assignment of unexpired leases and executory contracts and to fix cure obligations and adequate assurance of future performance

at such time it becomes clear what contracts and unexpired leases are sought to be assumed and assigned.

(b) The Assignment Motion shall identify:

(i) The unexpired contracts and leases to be assumed and assigned as part of the Acquired Assets, including the name and address of the non-debtor party(ies) to such agreements.

(ii) All cure obligations required by § 365 of the Bankruptcy Code that the Debtor avers exist and need be satisfied upon assumption and assignment of such contracts and leases.

(c) Any objection to the proposed assumption and assignment, including without limitation the amount of any cure obligation and the nature of any alleged cure requirement, must be filed with the Bankruptcy Court and served upon the undersigned co-counsel for the Debtor, within the time provided by Court order. A hearing on the Motion and any objections thereto will be conducted at a date and time to be set by the Court.

(d) The assumption and assignment of any executory contract or lease pursuant to the Assignment Motion shall be contingent upon closing of the sale of the Acquired Assets. In the event that a sale of the Acquired Assets should not close, the executory contracts and unexpired leases shall not be assumed or otherwise affected absent separate motion and order seeking such relief.

## VI. BASIS FOR RELIEF

24. The Debtor believes that a sale of the Acquired Assets pursuant to the terms and conditions set forth herein is in the best interests of the Debtor's creditors and its employees. The proposed sale of the Acquired Assets under the procedures set forth herein are sought to obtain the maximum value for those assets and to effectuate an orderly wind down of the Debtor's business operations. The Debtor believes the proposed sale of the Acquired Assets pursuant to the Bidding Procedures referenced herein currently provides the best method of obtaining maximum value for such Acquired Assets. Accordingly, as set forth herein, the proposed sale of the Acquired Assets is supported by sound business reasons.

B. <u>The Procedures Undertaken by the Debtor Will Obtain a Fair and Reasonable Price for the Acquired Assets.</u>

25. The Debtor has determined that the sale of the Acquired Assets according to the Bidding Procedures will enable it to obtain the highest and best offers for the Acquired Assets

and maximize the value of the Acquired Assets for the estates, and is in the best interests of the Debtor, its creditors and other parties in interest. The Bidding Procedures allow for interested parties to appear and bid on the Acquired Assets. Under the circumstances, the Debtor contends that the Bidding Procedures to be employed should generate a fair and reasonable price for the Acquired Assets.

C. <u>The Debtor Will Provide Adequate and Reasonable Notice of the Sale and Assignment Motions and Sale and Assignment Hearings to Interested Parties.</u>

26. The Debtor requests that this Court modify the notice requirements for the proposed sale because the standard notice requirements set forth in Bankruptcy Rules 2002 and 6004 would impede its ability to recover maximum value for the Acquired Assets. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. Fed. R. Bankr. P. 6004(f)(1). Further, pursuant to Bankruptcy Rule 2002(a)(2), this Court may, for cause shown, direct another method of giving notice regarding the general twenty (20) day period for the proposed use, sale, or lease of property of the estate other than in the ordinary course of business. Fed. R. Bankr. P. 2002(a)(2). Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. Fed. R. Bankr. P. 2002(c)(1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property. *Id*.

27. The Debtor submits that under the circumstances of the Cases, the notice, procedure and rules set forth herein satisfy the notice requirements of the Bankruptcy Rules and the Bankruptcy Code, and constitute good and sufficient notice, and that no other or further notice is required.

28.     The Breakup Fee is beneficial to the Debtor's estates.  The SBT bid reflected in the subsequent APA will establish a floor for further bidding on the Acquired Assets.  If the SBT bid is not the successful bid because a higher or otherwise better offer is received, the Debtor will have benefited from the floor established by the proposal.

## VII.  NOTICE AND PROCEDURES

29.     Bankruptcy Rules 2002 and 6004 require a debtor to give twenty-one (21) days notice of a motion under Section 363 of the Bankruptcy Code.   Section 105 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9007 give the Court general authority to regulate the procedures to be followed in connection with the sale of assets by a debtor outside the ordinary course of business and to regulate the form and manner of notices in connection with such sales.

30.     The Debtor has provided notice of the Motion in accordance with the proposed form attached hereto.  The Debtor respectfully submits that no other or further notice of this Motion is necessary and such notice constitutes good and sufficient notice of the relief requested in the Motion.

31.     Pursuant to Bankruptcy Rule 2002(m), this Court is empowered to enter any order "designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules."

32.     To ensure that adequate notice of the Sale Motion and Assignment Motion is provided, the Debtor intends to serve copies of the Sale Motion and Assignment Motion, including all exhibits thereto, and the notice of the Sale Hearing and Assignment Hearing upon (a) the Office of the United States Trustee, (b) counsel for the Agent, (c) the Debtor's twenty (20) largest unsecured creditors, (d) all parties in interest or creditors who have requested notice in the Bankruptcy cases, (e) all persons who are known by the Debtor to have judgments, liens

upon, or security interests in the Acquired Assets, or any Acquired Assets related thereto, (f) known parties to the contracts and/or leases that may be sold or assigned pursuant to Sale Motion or Assignment Motion, (g) the District Director of the Internal Revenue Service for the Western District of Tennessee and (h) all parties who are known to have expressed an interest in acquiring the Acquired Assets since the Petition Date; (i) any other party in interest who requests such information.  Furthermore, upon approval of the Court, the Debtor intends to serve the Bidding Procedures Order on those parties indicated above.

## VIII.  CONCLUSION

For the foregoing reasons, the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just and proper.

Dated: April 16, 2010

                Respectfully submitted,

                HARRIS SHELTON HANOVER WALSH, PLLC

BY:      /s/ Jonathan E. Scharff
        Jonathan E. Scharff    (#16890)
        Steven N. Douglass    (#09770)
        One Commerce Square, Suite 2700
        Memphis, Tennessee 38103-2555
        Telephone:  (901) 525-1455
        Facsimile:  (901) 526-4084
        jscharff@harrisshelton.com
        sdouglass@harrisshelton.com

        *Counsel to Debtor and Debtor-in Possession*

CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a copy of the preceding was electronically filed through the Court's ECF system and served this 16th day of April 2010, by operation of the Court's electronic noticing system and/or via electronic mail and/or via Federal Express upon the United States Trustee Madalyn Scott Greenwood; Assistant United States Attorney Barbara Zoccola; Katie G. Sternberg, Esq. 511 Union Street, Suite 2700, Nashville, TN 37219; R. Campbell Hillyer, Esq., 6075 Poplar Avenue, Suite 500, Memphis, TN 38117; Andrew B. Sanders, Esq. 6410 Poplar Avenue, Suite 190, Memphis, TN 38119; Elizabeth Weller, Esq., 2323 Bryan Street, Suite 1600, Dallas, TX 75201; Bruce M. Kahn, Esq., 6070 Poplar Avenue, 6th Floor, Memphis, TN 38119; Mark D. Taylor, Esq. and Jeffrey P. Fuller, Esq., 607 14th Street, NW, Suite 900, Washington, DC 20005-2018; Beverly Shideler, Esq., Two Lincoln Centre, Oakbrook Terrace, IL 60181; Alan E. Brown, Esq., 3M Center, Building 220-9E-02, St. Paul, MN 55144-1000; James E. Bailey, Esq., 6075 Poplar Avenue, 5th Floor, Memphis, TN 38119; Stephanie Green Cole, Esq., 100 N. Main, Suite 2601, Memphis, TN 38103; Geoffrey Gaia, Esq., 73 Union Avenue, Memphis, TN 38103; Ted W. Hight III, Esq., 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092 and the parties listed as the 20 Largest Unsecured Creditors.

                /s/ Jonathan E. Scharff
                Jonathan E. Scharff