# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

In re:

      WURZBURG, INC.,                      Case No. 10-21047-DSK
                                               Chapter11

            Debtor.

_____

### DEBTOR'S AMENDED MOTION FOR ORDER (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL ESTATE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; (C) OTHER RELATED RELIEF; AND (D) EXPEDITED HEARING REQUESTED

_____

Wurzburg, Inc., the debtor and debtor in possession (hereinafter "Debtor" or "Wurzburg"), hereby moves this Court, pursuant to  11 U.S.C. § §  363, 365 and 1146, and Bankruptcy Rule 9019, for an Order: (a) approving the sale certain assets free and clear of all liens, claims, rights, interests and encumbrances; (b) assumption and assignment of executory contracts; (c) other related relief; and (D) expedited hearing requested (hereinafter the "Amended Motion"). In further support of this Motion, Debtor respectfully represents as follows:

<u>JURISDICTION</u>

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157, 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are sections 105, 363(b), (f) and (m), and 365 (a), (b), (f) and (k), and 1146(c) of Title 11 of the United States Code (the "Bankruptcy Code") and rules 2002(a)(2), 6004(a), (b), (c), (e) and (g), 6006(a), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

1

## PARTIES

1.      The Debtor, Wurzburg, Inc. is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business located in Memphis, Tennessee.

2.      SBT Fund VI, LP (hereinafter referred to as "SBT"), is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business located in Houston, Texas.

3.      Amcor Packaging and Distribution ("Amcor") has issued an Asset Purchase Agreement ("Amcor APA").  A copy of the Amcor APA is available in electronic form from the undersigned upon written request.

4.      SBT and Debtor executed a letter of intent whereby SBT will purchase the Debtor as an on going business concern through an asset purchase agreement to be executed by the parties on or before May 22, 2010. A copy of the executed LOI was attached as Exhibit 1 to the original Motion and is incorporated herein by the reference. The Amcor APA has been substituted for the SBT LOI.

## BACKGROUND FACTS

5.      On February 1, 2010 (the "Petition Date"), Wurzburg commenced a voluntary case under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee (the "Court").  The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  An Official Committee of Unsecured Creditors ("Committee") has been appointed and has retained counsel ("Committee Counsel").

6.      The Debtor is a corporation created and operating under the laws of the State of Tennessee with its principal place of business located in Memphis, Tennessee. It has been a

family owned business for over 100 years. Debtor is engaged in the industrial packaging, distribution and labeling manufacturing industry.

7.      The Debtor has been marketing the sale of substantially all of its assets out of the ordinary course of business.  In the course of that process it has consulted with and continues to consult with First Tennessee Bank, its secured lender, and Committee Counsel.  Debtor believes that its assets, including the lawsuits in which the Debtor expects a substantial recovery, have sufficient value to satisfy the current outstanding balance of its secured creditor First Tennessee Bank, N.A., administrative claims and a possible dividend to unsecured creditors.

8.      In connection with its marketing efforts, the Debtor has allowed several interested parties to conduct due diligence inquiries.  In fact, the Debtor received three separate Letters of Intent and originally agreed to the LOI put forth by SBT Fund VI, LA and filed its Motion to Approve Bid Procedures accordingly.

9.      Due to circumstances beyond Debtor's control, including First Tennessee's Bank Agreement for Debtor to use cash collateral through May 2010, the time frames of the sale had to be shortened.  Thus, Debtor has agreed to and accepted the Amcor APA.

10.      Debtor determined it was in the best interest of the creditors and parties-in-interest to file an immediate amended motion to sell instead of waiting for the conclusion of the due diligence process of SBT because of the current market conditions, the Debtor's inability to obtain a post petition lending and its competitors continued attempt to solicit Debtor's customers. Debtor believes time is of the essence to realize its maximum value through a bidding process based on Amcor's APA.

11.     First Tennessee Bank holds liens against all of the Debtor's assets and as of the filing of this Motion, the Bank has a total principal and interest balance due and owing of approximately $6,300,00.00.

12.     Debtor believes that the Amcor APA received is the highest and best offer presented and will generate additional third parties to participate in bidding for the Debtor.

13.     An auction of the assets is the preferred method of maximizing the value of the assets.

14.     In order to avoid deterioration in asset values, avoid continued, protracted litigation, and retire secured debt that the Debtor has no other means to satisfy, the Debtor seeks to maximize value by consummating, as promptly as practicable, and the sale of all or substantially all of its assets through an orderly sale process approved by the Bankruptcy Court.

<u>MARKETING EFFORTS</u>

15.     Over the past few months, the Debtor has been marketing its assets.  The Debtor has been in contact with a number of potential purchasers (at least 14) during the last several months, and several of them have or are in the process of conducting due diligence.  The Debtor communicated and solicited through various means a large number of potential buyers of the Debtor as an ongoing concern.

16.     To date, the highest and best offer received by the Debtor to purchase the Debtor's assets was the Amcor APA.  Amcor seeks to purchase substantially all of Debtor's assets including, but not limited to, accounts receivable, inventory, contracts and lawsuits (the "Assets").

17.     In light of the risk that the value of the Assets will erode, and in an effort to maximize value by proceeding with the best available offer to purchase the Assets, the Debtor

seeks in this Motion to sell, assume and assign certain executory contracts, and to sell the assets free and clear of liens, claims, interests, and encumbrances.  It is important the sale be approved and consummated as soon as possible.

18.     The Amcor APA is the result of arms-length, extensive negotiations between the parties over a period of several weeks.

RELIEF SOUGHT

19.     The Debtor requests approval of the sale of certain assets of the Debtor to Amcor pursuant to the terms and conditions to be set forth in an asset purchase agreement based on the basic terms set forth in the Amcor APA.  The Debtor intends to promote Amcor as the "stalking horse" but Debtor seeks authority to obtain alternative offers and conduct an auction sale open to all bidders subject to the Court's order on procedures.

20.     Contemporaneous with the sale of the Assets, Debtor seeks to assume and assign unexpired leases and executory contracts to be identified in the asset purchase agreement.  Upon approval of the assumption of the Debtor's interest in certain unexpired leases and executory contracts, Debtor seeks to assign its assumed interests to SBT or the successful bidder pursuant to the terms and conditions set forth herein and an asset purchase agreement and the final sale terms.

21.     The Debtor requests that the sale be approved free and clear of any liens, claims, encumbrances or interests, with any such liens attaching to the proceeds of sale.  The Debtor also seeks to have Amcor paid directly to First Tennessee Bank.

22.     Pursuant to Section 365(k) of the Bankruptcy Code, Debtor requests that the unexpired leases and executory contracts constituting the assumed contract shall, upon assignment to Amcor, be deemed valid and binding and in full force and effect and enforceable

in accordance with its terms, and the Debtor shall be relieved from any further liability with respect thereto after the assignment.

23.     Debtor requests that the provisions of Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) which would otherwise stay any order approving the sale and assignment of contracts as requested herein, be waived to allow the sale to close as quickly as possible.

<u>APPLICABLE AUTHORITY</u>

**Assumption & Assignment of the License Agreement**

24.     Section 365(a) of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  A bankruptcy court's discretion to approve a debtor's decision to assume or reject an executory contract is limited to a determination regarding whether such decision is a valid exercise of the debtor's business judgment.  *See Century Brass Prods., Inc. v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. (In re Century Brass Prods., Inc.)*, 795 F.2d 265, 271 (2d Cir. 1986), *cert. denied*, 479 U.S. 948 (1986).  Business judgment is not a strict standard, it merely requires a showing that either assumption or rejection of the lease or contract will benefit the debtor's estate.  *See Borman's Inc. v. Allied Supermarkets, Inc.*, 706 F.2d 187, 189 (6th Cir. 1983); *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984).  Courts routinely approve motions to assume or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See, e.g., Century Brass Prods.*, 795 F.2d at 271; *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 42 (2d Cir. 1979); *In re Child World, Inc.*, 147 B.R. 847, 850 (Bankr. S.D.N.Y. 1992).

25.    Application of the business judgment rule requires a court to accept a debtor's decision unless "it is shown that the [debtor's] decision one taken in bad faith or in gross abuse of the [debtor's] retained discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1984); *cert. denied*, 475 U.S. 1057 (1987).   Courts have uniformly deferred to the business judgment of a debtor to determine whether the assumption of an executory contract would be beneficial to the estate and is therefore appropriate under section 365(a) of the Bankruptcy Code. *See, e.g.*, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) *cert. denied*, 511 U.S. 1026 (1994).

26.    Debtor has determined in an exercise of its business judgment that approval of the assumption of certain unexpired leases and executory contracts, in accordance with the terms set forth herein and in the Agreement is in the best interest of the Debtor and the bankruptcy estate. Such actions will provide benefit to the Debtor's bankruptcy estate.

27.    A sound business reason exists for assumption and assignment of certain unexpired leases and executory contracts to Amcor in connection with the Sale.

28.    The Debtor seeks court approval to assume and assign to Amcor the unexpired leases and executory contracts.

29.    Section 365 of the Bankruptcy Code permits a debtor to both assume and assign an executory contract upon the authority of the Bankruptcy Court after notice and a hearing. The question whether an executory contract should be rejected, and if not, on what terms it should be assumed, is one of business judgment. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Group of Institutional Investors v. Chicago. Milwaukee, St. Paul and Pacific R. Co.*, 318 U.S. 523, 550 (1943), *reh'g denied Group of Institutional Investors v. Abrams*, 318 U.S. 803

(1943); *In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd Cir. 1993); *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303 (5th Cir. 1985).

30.     The Debtor believes that the assumption and assignment of certain unexpired leases and executory contracts as requested under the Agreement and this Motion are within the sound business judgment of the Debtor.

31.     Debtor does not believe any amounts are owing to the non-debtor parties to the unexpired leases and executory contracts and assumed contract(s). Thus, cure procedures are not necessary.

32.     Debtor requests that the assumed lease and executory contracts shall, upon assignment to SBT, be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms, and the Debtor's estate shall be relieved from any further liability with respect thereto after their assignment pursuant to section 365(k) of the Bankruptcy Code.

### The Sale Should Be Approved Pursuant to 11 U.S.C. §  363

33.     Debtor also requests approval to sell its Assets.  The proposed sale should be approved as fair, reasonable and in the best interests of the estate.

34.     Section 363(b)(1) provides, in relevant part, that a "trustee, after notice and a hearing, may … sell .. . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

35.     Bankruptcy Code section 363(b) and Rule 6004 of the Federal Rules of Bankruptcy Procedure permit a debtor to sell assets of the estate, including executory contracts, outside of its ordinary course of business, after notice and a hearing. *See, eg., In re Qintex Entertainment, Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991).  In accordance with Bankruptcy Rule

6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. *See* Fed. R. Bankr. P. 6004(f)(1).

36.     Here, Debtor asserts that Amcor is the highest bidder for the Assets, and sale of the Assets should be approved via a private sale.  If a sound business purpose exists, the sale of property of the estate should be authorized pursuant to section 363 of the Bankruptcy Code. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test).

37.     Courts have approved the sale of assets of a debtor, where absent such sale the debtor would likely free fall into liquidation resulting in material adverse harm to creditors. *See e.g., In re TWA*, 2001 Bankr. LEXIS 980, *32-33 (Bankr. D. Del. 2001) ("The purpose of a § 363(b) sale is to maximize the benefit to the debtor's entire estate.").

38.     Although section 363(b) does not provide an express standard for determining whether the court should approve a particular proposed sale, courts have examined (i) whether the proposed transaction has a valid business justification or good business reason, (ii) whether the sale is the result of good faith negotiations, and (iii) whether the proposed purchase price is fair and reasonable. *McClung*, 789 F.2d at 390; *See also In re Abbotts Dairies of Agreement., Inc*., 788 F.2d 143, 146, 149-50 (3rd Cir. 1986.  All three of these factors are satisfied here.

39.     There is a valid business justification and sound business reason to approve the sale.

40.     The Debtor has reached the conclusion that a prompt asset sale is necessary based upon consideration of many factors, including its rapidly accumulating losses, very modest and dwindling cash reserves, defaults under its secured debt, accumulation of unpaid trade debt, difficulty in obtaining and retaining trade credit terms, and its inability to obtain new equity or

debt financing. The Debtor has concluded, in the exercise of its business judgment, that a prompt asset sale to a financially capable buyer represents the best manner in which to preserve the going concern and maximize value to creditors of the debtor's Chapter 11 estate. The proposed sale is therefore warranted.

41.     The proposed sale will provide fair and reasonable consideration to the Debtor's estate.

42.     The Amcor APA represents the best offer received to date by the Debtor for the Assets. It was entered into after an extensive marketing process, and the consideration to be paid under the Agreement is fair and reasonable.

43.     Pursuant to section 363(f), the sale shall be free and clear of all liens, claims, rights, interests, and encumbrances.

44.     Section 363(f) provides, in relevant part, that a trustee may sell property under subsection (b) . . . free and clear of any interest in such property of an entity other than the estate, only if—

> a.   applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> b.   such entity consents;
>
> c.   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> d.   such interest is in bona fide dispute; or
>
> e.   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
>
> 11 U.S.C. § 363(f)(1)-(5).

45.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtor's sale of the Assets free and clear of all Liens and Claims, See 11 U.S.C. § 363(f); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (Section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met); *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) (same).

46.     To the extent that any liens and claims encumber the Assets, the lien holders could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interests in the Assets. See 11 U.S.C. § 363(f)(5).

47.     Valid, enforceable liens, claims, and interests against or in the Assets shall attach to the proceeds of the sale in the order of their relative priority.  11 U.S.C. § 363(e) (on request of party holding interest in property of the estate, court shall condition sale under Section 363 "as is necessary to provide adequate protection of such interest"); *In re P.K.R. Convalescent Ctrs, Inc.,* 189 B.R. 90, 94 (Bankr. E.D.Va. 1995) (a sale under Section 363(f) is subject to the adequate protection requirement); S.Rep. No. 989, 95th Cong., 2d Sess. 345 (1978) ("Most often, adequate protection in connection with a sale free and clear of other interests will be held to have those interests attach to the proceeds of the sale.").  As such, First Tennessee's lien shall attach to the proceeds of the sale.

48.     The Debtor believes the sale is in the best interest of creditors and the estates and that, together with approval of the sale, assumption and assignment of the unexpired leases and executory contracts as required under the Agreement is within the sound business judgment of the Debtor.

49.     Accordingly, the Debtor should be authorized to sell the Assets to the buyer free and clear of all liens and claims pursuant to Section 363(f) of the Bankruptcy Code as a sound business reason exists for assumption, assignment, and sale of the Assets to SBT.

50.     Debtor also would show that the proposed sale is in good faith, and the protections of 11 U.S.C. § 363(m) should be afforded.

**Waiver of Fourteen Day Stay of Sale Order and Notice**

51.     Pursuant to Fed. R. Bankr. P. 6004 and 6006, an order authorizing the sale of a debtor's assets or the sale, assumption and assignment of an executory contract "is stayed until the expiration of 14 days after the date of the entry of the order, unless the court orders otherwise." *See* Fed. R. Bankr. P. 6004(h) and 6006(d).

52.     The Debtor requests that the stay imposed by Fed. R. Bankr. P. 6004(h) and 6006(d) upon orders authorizing the use, sale or lease of property, and assignment of contracts, respectively, be waived under the circumstances of this case.

53.     It is in the interest of the Debtor's creditors and estates that the sale be consummated as quickly as possible without any stay pending appeal in light of Debtor's financial condition and substantial reduction in ongoing operational costs after the sale closes.

54.     Notice of this Motion is being provided in the manner indicated on the certificate of service listed below demonstrating service to the following parties or, in lieu thereof, to their counsel, if known: (i) Amcor; (ii) First Tennessee Bank; (iii) Committee Counsel; (iv) the twenty largest unsecured creditors; (v) the U.S. Trustee ; (vi) I.R.S. (vii) Tennessee Department of Revenue, and (viii) all parties in interest requesting notice.

55.     Since the Debtor has served this Motion upon all of its creditors, interest holders, and other parties-in-interest, any person having any objection to the Motion will be afforded a

12

reasonable opportunity to voice any objections or concerns. Accordingly, the Debtor is aware of no prejudice that would be caused by the Court's waiver of Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d).

56.     The Debtor believes that such notice is sufficient and adequate under the circumstances.

WHEREFORE, the Debtor respectfully requests that the Court enter its order as follows:

1.     Subject to any limitations or modifications contained in the Court's order, without need for any further Court order, approving the Motion and authorizing the Debtor to consummate and carry out an auction sale of its assets as described in the Motion and to undertake the obligations or other matters imposed, required or provided for therein such that, among other things, the Debtor may sell assets, assign contracts and leases, and grant or exchange releases as provided for in the Motion and Agreement as required thereby;

2.     Authorizing the Debtor, pursuant to Section 365(a), to assume and assign the unexpired leases and executory contracts, which assumption and assignment, without any further order of this Court being required, to occur upon Closing;

3.     In accordance with Section 365(k) of the Bankruptcy Code, determining that the assignment by the Debtor of the unexpired leases and executory contracts relieves the Debtor and the bankruptcy estate from any liability for any breach of such unexpired leases and executory contracts occurring after such assignment, except as may be expressly provided to the contrary in the Agreement or related agreements between the Debtor and SBT;

4.     Under 11 U.S.C. §  363(f) and without further order of the Court, approving the sale of the Assets free and clear of all liens, claims, and encumbrances other than as expressly set forth in the Agreement, with any such existing liens, claims, interests or encumbrances not paid

prior to or concurrently with the Closing attaching to the proceeds of the sale allocable to the

property which was subject to the particular liens, claims, interests, and encumbrances in the

same order and priority as such liens, claims, or encumbrances had prior to the Closing;

     5.    Determining that the buyer is a good faith purchaser of Debtor's assets such that

11 U.S.C. § 363(m) will be applicable;

     6.    Finding that the terms of the sale are fair and reasonable, and they buyer is paying

reasonably equivalent value for the Assets;

     7.    Waiving the provisions of Federal Rules of Bankruptcy Procedure 6004(h) and

6006(d) under the circumstances;

     8.    For such other and further relief as the Court deems appropriate.


                    Respectfully submitted,


                    /s/ Jonathan E. Scharff
                    Jonathan E. Scharff      (#16890)
                    Steven N. Douglass      (#09770)
                    Harris Shelton Hanover Walsh, PLLC
                    2700 One Commerce Square
                    Memphis, Tennessee 38103-2555
                    Telephone:  (901) 525-1455
                    Facsimile:  (901) 526*4084
                    jscharff@harrisshelton.com
                    sdouglass@harrisshelton.com

                    *Counsel to Debtor and Debtor-in Possession*


<u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that a copy of the preceding was electronically filed through the Court's ECF system and served this 23rd day of April 2010, by operation of the Court's electronic noticing system and/or via first class mail upon the United States Trustee Madalyn Scott Greenwood; Assistant United States Attorney Barbara Zoccola; Katie G. Sternberg, Esq. 511 Union Street, Suite 2700, Nashville, TN 37219; R. Campbell Hillyer, Esq., 6075 Poplar Avenue, Suite 500, Memphis, TN 38117; Andrew B. Sanders, Esq. 6410 Poplar Avenue, Suite 190, Memphis, TN 38119; Elizabeth Weller, Esq., 2323 Bryan Street, Suite 1600,

Dallas, TX 75201; Bruce M. Kahn, Esq., 6070 Poplar Avenue, 6th Floor, Memphis, TN 38119; Mark D. Taylor, Esq. and Jeffrey P. Fuller, Esq., 607 14th Street, NW, Suite 900, Washington, DC 20005-2018; Beverly Shideler, Esq., Two Lincoln Centre, Oakbrook Terrace, IL 60181; Alan E. Brown, Esq., 3M Center, Building 220-9E-02, St. Paul, MN 55144-1000; James E. Bailey, Esq., 6075 Poplar Avenue, 5th Floor, Memphis, TN 38119; Stephanie Green Cole, Esq., 100 N. Main, Suite 2601, Memphis, TN 38103; Geoffrey Gaia, Esq., 73 Union Avenue, Memphis, TN 38103; Ted W. Hight III, Esq., 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092; Local Union 3036 International Union Automobile, et al., Bill Pickard, President, PO Box 750130, Memphis, TN38175-0130; Teamsters Local 984 Brotherhood of Teamsters, Terry Lovan, President, Darrin Harrison, Vice President, 3020 Sandbrook St., Memphis, TN 38116   and the parties listed as the 20 Largest Unsecured Creditors.

/s/ Jonathan E. Scharff
Jonathan E. Scharff